STANDARD OIL CO. OF LOUISIANA *v.* UNITED STATES [1]

United States Customs Court, First Division

(Decided October 6, 1938)

*Sharretts & Hillis* (*Edward P. Sharretts* of counsel) for the plaintiff.

*Joseph R. Jackson,* Assistant Attorney General (*Samuel D. Spector* and *Richard F. Weeks,* special attorneys), for the defendant.

Before McCLELLAND, SULLIVAN, and BROWN, Judges; BROWN, J., dissenting

McCLELLAND, Presiding Judge: We have here three protests each against the action of the collector of customs at the port of New

[1] C. D. 39.

Orleans assessing a tax at the rate of one-half of 1 cent per gallon under the provisions of section 601 (c) (4) of the Revenue Act of 1932 on part of an importation of fuel oil which had been entered for warehouse. It is claimed in each of the protests that the oil in issue was withdrawn with the express purpose of being put on board of an American vessel engaged in foreign trade, and was therefore not subject to any duty or tax by virtue of section 630 of the Revenue Act of 1932.

It is disclosed by the record made on the hearing of these protests that 2,722,110 gallons of fuel oil were imported into the port of New Orleans in the motorship *Cleopatra* on December 24, 1935, and that, among others, three withdrawals were made therefrom, one on December 30, 1935, of 316,968.86 gallons, of which 183,361.92 gallons were sold to the Mississippi Shipping Co. and supplied to the S. S. *Delmundo*, and two on January 6, 1936, of 281,293.32 and 140,511.42 gallons, respectively, of which a total of 253,080.24 gallons were sold to the Mississippi Shipping Co. and supplied to the S. S. *Delmundo*.

Following these withdrawals and on February 18, 1936, the collector liquidated the entry, assessing a tax, as aforesaid, at the rate of one-half of 1 cent per gallon under the provisions of section 601 (c) (4) of the Revenue Act of 1932 on the entire quantity of oil imported. As to the oil covered by these withdrawals which was supplied to the S. S. *Delmundo* duty was not paid until after September 23, 1936, upon which day the collector addressed to the protestant the following notice:

No. 44809

NOTICE OF DUTIES DUE

*United States Customs Service*

District No. 20 Port of New Orleans, La., Sept. 23, 1936

To Standard Oil Company of Louisiana

New Orleans, La.

There is due the United States, on W. H. entry No. 375, 12–26–35 liquidated 2–18–36

Supplemental duty _____ $6, 059. 13
    TOTAL _____ $6, 059. 13

I certify that this amount is correct.

A. MILES PRATT,
*Collector of Customs.*
by (Sgd.) E. BLEIST.

The actual date of payment of such duties was October 23, 1936, more than eight months after the date of liquidation. On November 17, 1936, following such payments, each of these protests was filed

against the action of the collector, and when the protests came on to be heard at the port of New Orleans, Government counsel, preliminary to such hearing and at the close thereof, moved that each of the protests be dismissed on the ground that none of them was filed within the statutory time allowed therefor.

The stenographic minutes do not disclose the attitude of plaintiff's counsel on this motion. It is simply noted in the record following the motion made preliminary to the taking of testimony that there was discussion off the record. The judge presiding denied the motion subject to the action of the full division having cognizance of the subject matter of the protests.

Each of the protests contains the following:

We hereby protest against your assessment, under the provisions of the Revenue Act of 1932, Section 601 (c) (4), as evidence by your notice of duties due No. 44809, dated September 23, 1936, of a tax of ½¢ per gallon on 183,361.92 [as the case may be] American measured gallons at 60° F. fuel oil supplied the American S/S "Delmundo" * * *.

The inference from the foregoing is that it is the plaintiff's view that the right of protest did not begin to run until the date on which the collector served or caused to be served on the plaintiff the notice referred to. This inference is supported by the argument in the brief of plaintiff's counsel.

Section 514 of the Tariff Act of 1930 provides:

Except as provided in subdivision (b) of section 516 of this Act (relating to protests by American manufacturers, producers, and wholesalers), all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs laws, and his liquidation or reliquidation of any entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation or reliquidation when such liquidation or reliquidation is made more than ten months after the date of entry, shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision, or refusal, be final and conclusive upon all persons (including the United States and any officer thereof), unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, shall, within sixty days after, but not before such liquidation, reliquidation, decision, or refusal, as the case may be, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto. * * *.

Plaintiff and its counsel elect to call the notice of duties due quoted *supra* a decision or exaction of the duties therein specified. This would appear to the writer to be an unwarranted characterization.

It has been so frequently decided that a collector of customs is not required to send notice of the amount of duties due as the result of the

liquidation of an entry that the citation of authorities is hardly necessary, and it has been held that if such notice be given, even if it contained a demand for payment, it is not to be considered such an exaction as to give the plaintiff the right to protest the same. See in this connection *Scherk Importing Co.* v. *United States*, 17 C. C. P. A. 135, T. D. 43470, in which the following excerpt from *United States* v. *Andrews & Co.*, 14 Ct. Cust. Appls. 62, T. D. 41576, is quoted:

> The demand of the collector upon the importer for duties under date of September 5, 1922, was nothing more than a communication to the importer in the course of the administration of the business of the collector's office and can not be (under the authority of the cases hereinbefore cited) taken as "exactions of whatever character," as mentioned in said paragraph N.

It is to be noted that in the case at bar the collector's liquidation on February 18, 1936, took place *after* the withdrawal of the oil in question for the claimed purpose of supplying an American vessel engaged in the foreign trade, so that it must be presumed that the collector was in possession of all the facts necessary to a valid liquidation, at least so far as any claim under section 630, *supra*, is concerned.

Manifestly, none of the protests was filed within the statutory period allowed therefor, and, having thus decided, it becomes unnecessary to pass upon the question of whether the S. S. *Delmundo* was or was not actually engaged in foreign trade.

The motion to dismiss the protests is granted. Judgment will issue accordingly.

### DISSENTING OPINION

Brown, Judge: I am unable to concur in the majority opinion and judgment dismissing these protests for lack of jurisdiction upon the claim that the protests are untimely.

The issue involved is whether the provision exempting from duty ships' supplies for vessels actually engaged in foreign trade applies to a vessel first "enrolled," as if in the coasting trade for certain local purposes, in going from one United States port to another to collect its foreign cargo, and before it commenced its foreign voyage.

The merchandise was released from warehouse on so-called conditionally free entries for ships' supplies. This amounted to at least a tentative holding that the oil was entitled to free entry as for ships' supplies. Endorsed upon the permits to this end was the statement by a customs official that the merchandise was laden on the S. S. *Delmundo* (see permits 119, 122, and 123).

The collector's answer to the protest is a blanket one answering this and other protests relating to different boats and different warehouse entries, in addition to the warehouse entry here involved, and was filed with protest 848366–G (collector's number 10908), but it

specifically covers the three protests before us relating to the S. S. *Delmundo* and reads as follows under the heading:

REASONS AND AUTHORITY FOR ACTION

Tax was assessed as above for the reason that, after the fuel oil had been withdrawn conditionally free of tax as fuel supplies, under Section 309 of the Tariff Act of 1930 and Section 630 of the Revenue Act of 1932, it was discovered that the vessels were under enrollment at the time the withdrawals were made. A demand on Form 5107 was then made upon the protestant to pay the tax provided for under Section 601 (c) (4) of the Revenue Act of 1932. The action of the Collector was sustained by the Commissioner of Customs, who, in telegram of October 6, 1936, stated that the facts clearly showed that the vessels were not engaged in a class of trade at the time of withdrawal of the oil that entitled free privilege under Section 630 of the Revenue Act of 1932.

Attached thereto is the radiogram of October 6, 1936, to the collector of customs from the Commissioner of Customs at Washington, D. C., to whom the collector of customs, evidently to make sure that his ruling about enrolled boats, then evidently being made, was correct, had submitted it. This reads as follows:

OCTOBER 6, 1936.

COLLECTOR CUSTOMS NEW ORLEANS LA
RELET SEPTEMBER TWENTY NINTH FUEL SUPPLIES VESSELS MISSISSIPPI SHIPPING COMPANY FACTS CLEARLY SHOW VESSELS NOT ENGAGED IN CLASS OF TRADE AT TIME WITHDRAWAL ENTITLED FREE WITHDRAWAL PRIVILEGE SECTION SIX THIRTY REVENUE ACT STOP ACTION YOUR OFFICE CORRECT STOP COLLECT STANDARD OIL COMPANY

MOYLE

The so-called liquidation of February 18, 1936, which the Government contends decided the question of enrollment and therefore makes these protests too late, was for the amount of $13,610.55, while the demand for payment of September 23, 1936, was for $6,059.13. This change of amount conclusively shows that the action in September was a reliquidation, which opened up the right of protest, if the action of February 18, 1936, was technically a liquidation and decision of this question concerning enrolled ships.

The form of the collector's answer to protest also shows conclusively that he and the Commissioner of Customs were deciding for the first time in September 1936 the question of the legal effect of the temporary "enrollment" of a vessel engaged in foreign trade.

The so-called liquidation of February 18, 1936, could not have been a decision of that question because it covered entries as to registered vessels under this and other entries, as well as the enrolled boat *Delmundo*, the subject of the present controversy.

If the liquidation of February 18, 1936, was deciding the question at issue here (instead of being a mere formal statement of the classification, if dutiable) it would have been immediately followed by a demand of $13,610.55 which was not made then or afterward. We cannot

assume that the collector of customs would have neglected his duty for more than six months. On the contrary, he expressly states that "then," i. e., just before he made the demand for $6,059.13, the fact of enrollment had come to his attention and been taken up for decision.

It is true that a formal liquidation in a matter of this kind may have been considered necessary stating the classification if it later turned out that the oil was not laden as supplies for a vessel engaged in foreign trade. This, ordinarily, would have come before withdrawal from warehouse on conditionally free entries for ships' fuel supplies.

The fact that due to rush of business in the collector's office or other accidental cause it happened to be delayed until after the conditionally free entries had been made out of warehouse would not change it into a decision of the controversy here, which was not up at that time, and was only later taken up for decision upon its later discovery as the collector's formal answer to the protest shows.

There could be no presumption from official action which would change its effect contrary to the official statement of the actor himself.

We therefore should hold without hesitation that these protests were timely, should take jurisdiction and decide the case on the merits. On the merits of the question here involved the plaintiff brings itself under the express terms of the exemption.

The statute frees the oil from duty if it is used for fuel upon a ship engaged in foreign trade. This ship was solely engaged in foreign trade. The fact that it was enrolled instead of registered, though not actually engaged in coastwise trade, while proceeding from New Orleans to Pensacola for the purpose (after obtaining temporary registration) of picking up cargo for foreign trade at Pensacola and Mobile, all of which the record plainly shows, would not destroy the express exemption or legally affect it in any way.

Judgment should issue for refund of duty collected upon all this oil used as fuel by the *Delmundo* except possibly, but by no means certainly, the very small portion consumed while going from one United States port to another to pick up her foreign cargo.